IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BRADLEY P. KNIGHT )
 )
       PLAINTIFF, )
 )
v. )
 )
BRUCE M. BENDER, )
Serve: 1401 Rockville Pike, Suite 650 )
      Rockville, MD 20852 )
 )
AXELSON, WILLIAMOWSKY, BENDER & )
FISHMAN, P.C., )
Serve: c/o Registered Agent )
      Samuel D. Williamowsky )
      1401 Rockville Pike, Suite 650 )
      Rockville, MD 20852 )
 )
RONALD E. JOHNSON, JR., )
Serve: 909 Wrights Summit Parkway, Suite 210 )
      Fort Wright, KY 41011 )    CASE NO.
 )
PENNY U. HENDY, )
Serve: 909 Wrights Summit Parkway, Suite 210 )
      Fort Wright, KY 41011 )
 )
SCHACHTER, HENDY & JOHNSON, P.S.C., )
Serve: c/o Registered Agent )
      Penny Hendy )
      909 Wright's Summit Parkway, Suite 210 )
      Fort Wright, KY 41011 )
 )
HOWARD A. JANET, )
Serve: 1777 Reisterstown Road, Suite 165 )
      Baltimore, MD 21208 )
 )
ROBERT K. JENNER, )
Serve: 1777 Reisterstown Road, Suite 165 )
      Baltimore, MD 21208 )
 )
AND )
 )

GENTRY LOCKE
   Attorneys
ROANOKE, VIRGINIA

| | |
|---|---|
| JANET, JENNER & SUGGS, LLC<br>Serve: c/o Registered Agent<br>    Howard A. Janet<br>    Suite 165 Commercenter East<br>    1777 Reisterstown Road,<br>    Baltimore, MD 21208<br><br>    DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW the plaintiff, Bradley P. Knight ("Knight"), by counsel, for his Complaint against defendants Bruce M. Bender ("Bender"), Axelson, Williamowsky, Bender & Fishman, P.C. ("the Bender firm"), Ronald E. Johnson, Jr. ("Johnson"), Penny U. Hendy ("Hendy"), Schachter, Hendy & Johnson, P.S.C. ("the Schachter firm"), Howard A. Janet ("Janet"), Robert K. Jenner ("Jenner"), and Janet, Jenner & Suggs, LLC ("the Janet firm") and says as follows:

### Parties

1. Knight was, at all relevant times hereto, a citizen and resident of the Commonwealth of Virginia and/or the State of Tennessee.

2. Bender is an attorney residing in the State of Maryland and licensed to practice law in the State of Maryland.

3. The Bender firm is a business entity formed under the laws of the State of Maryland with its principal place of business in the State of Maryland.

4. At all times and places pertinent to this action, the Bender firm acted through its employees and agents, including, but not limited to, Bender.

5. At all times and places pertinent to this action, Bender was an employee and/or agent of the Bender firm.
GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

6. At all times and places pertinent to this action, the Bender firm's employees and agents, including, but not limited to, Bender were acting in the course and scope of their employment and/or agency with the Bender firm.

7. At all times and places pertinent to this action, the Bender firm was vicariously liable for the actions and omissions of its employees and agents, including, but not limited to, Bender.

8. Johnson is an attorney residing in the Commonwealth of Kentucky and licensed to practice law in the Commonwealth of Kentucky.

9. Hendy is an attorney residing in the Commonwealth of Kentucky and licensed to practice law in the Commonwealth of Kentucky.

10. The Schachter firm is a business entity formed under the laws of the Commonwealth of Kentucky with its principal place of business in the Commonwealth of Kentucky.

11. At all times and places pertinent to this action, the Schachter firm acted through its employees and agents, including, but not limited to, Johnson and Hendy.

12. At all times and places pertinent to this action, Johnson and Hendy were employees and/or agents of the Schachter firm.

13. At all times and places pertinent to this action, the employees and agents of the Schachter firm, including, but not limited to, Johnson and Hendy were acting in the course and scope of their employment and/or agency with the Schachter firm.

14. At all times and places pertinent to this action, the Schachter firm was vicariously liable for the actions and omissions of its employees and agents, including, but not limited to, Johnson and Hendy.

15. Janet is an attorney residing in the State of Maryland and licensed to practice law in the State of Maryland.

16. Jenner is an attorney residing in the State of Maryland and licensed to practice law in the State of Maryland.

17. The Janet firm is a business entity formed under the laws of the State of Maryland with its principal place of business in the State of Maryland.

18. At all times and places pertinent to this action, the Janet firm acted through its employees and agents, including, but not limited to, Janet and Jenner.

19. At all times and places pertinent to this action, Janet and Jenner were employees and/or agents of the Janet firm.

20. At all times and places pertinent to this action, the employees and agents of the Janet firm, including, but not limited to, Janet and Jenner were acting in the course and scope of their employment and/or agency with the Janet firm.

21. At all times and places pertinent to this action, the Janet firm was vicariously liable for the actions and omissions of its employees and agents, including, but not limited to, Janet and Jenner.

## Jurisdiction and Venue

22. This court has personal jurisdiction over Bender and the Bender firm because they regularly conducted substantial business activity in the Commonwealth of Virginia, because they contracted to represent Knight in a case before the Virginia Worker's Compensation Commission, because Bender filed a notice of representation with the Virginia Worker's Compensation Commission, and because Bender proceeded

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

to represent Knight before the Virginia Worker's Compensation Commission over a period of several months.

23. This court has personal jurisdiction over Johnson, Hendy and the Schachter firm because they regularly conducted substantial business activity in the Commonwealth of Virginia, solicited clients in the Commonwealth of Virginia, mailed a contract of representation and other documents to Knight at his home in Troy, Virginia, and proceeded to represent Knight for his products liability claim, which arose solely under the laws of and in the jurisdiction of the Commonwealth of Virginia.

24. This court has personal jurisdiction over Janet, Jenner and the Janet firm because they regularly conducted substantial business activity in the Commonwealth of Virginia, they worked with the Schachter firm to solicit clients in the Commonwealth of Virginia, they contracted to represent Knight for his Virginia products liability claim, and they proceeded to represent Knight for his products liability claim, which arose solely under the laws of and in the jurisdiction of the Commonwealth of Virginia.

25. The subject matter jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 because this Complaint alleges damages in the amount of $2,649,831.57 and there is complete diversity between the parties.

26. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1391(b)(3) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, or in the alternative, each defendant is subject to this court's personal jurisdiction with respect to this action.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

27. Specifically, venue is proper in the Western District of Virginia because:

   a. Knight's original workplace injury occurred in the Western District of Virginia;

   b. Knight's worker's compensation claim arose in the Western District of Virginia under the laws of the Commonwealth of Virginia;

   c. Knight's products liability claim arose in the Western District of Virginia under the laws of the Commonwealth of Virginia;

   d. Many of Knight's treating medical providers are located in the Western District of Virginia;

   e. Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm solicited Knight as a client within the Western District of Virginia, which resulted in Knight signing a contract of representation within the Western District of Virginia;

   f. During the course of representation, the Defendants collectively were involved in Knight's bankruptcy case, which was pending in the Western District of Virginia;

   g. Defendants' collective actions and omissions have now deprived Knight of his workers' compensation benefits, which he was receiving within the Western District of Virginia;

### Facts

28. On or about August 10, 2010, Knight was injured while working at Red Front Stores, Inc. – Crozet Great Valu ("Employer") located in Crozet, Virginia.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

29. On or about August 10, 2010, Employer was insured by State Farm Insurance Company ("Insurer") for any worker's compensation injuries.

30. At the time of his injury, Knight was wearing a pair of Skechers toning shoes.

31. While at work wearing the Skechers toning shoes, Knight stepped on another person's foot, then fell forward striking both shins on a set of metal stairs.

32. The same day, Knight sought treatment at Martha Jefferson Hospital Emergency Department in Charlottesville, Virginia, for the injuries he sustained in the fall. From August 10, 2010, through January of 2011, Knight continued to treat with various medical providers. During that time, his Employer and Insurer voluntarily provided worker's compensation benefits.

33. During the course of treatment, Knight's condition worsened, and he was eventually diagnosed with complex regional pain syndrome ("CRPS") and/or Reflex Sympathetic Dystrophy ("RSD").

34. On January 28, 2011, the Commonwealth of Virginia Worker's Compensation Commission entered an Award Order providing Knight with temporary total disability benefits in the amount of $514.27 per week from August 11, 2010, and continuing and lifetime medical benefits for both shins and both knees.

35. From January 28, 2011, to November 2, 2011, Knight continued to receive his worker's compensation benefits without being represented by counsel.

36. On or about November 2, 2011, Knight contracted with Bender and the Bender firm for legal representation in his Virginia worker's compensation case.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

37. On or about November 7, 2011, Bender drafted and caused to be filed a letter of representation with the Virginia Worker's Compensation Commission.

38. At all times relevant to this proceeding, Bender was not licensed to practice law within the Commonwealth of Virginia.

39. From November of 2011 and continuing until November of 2015, Bender and the Bender firm continued to represent Knight in his Virginia worker's compensation case by developing the medical evidence, contacting Knight's treating providers in Virginia, filing documents and records with the Virginia Worker's Compensation Commission, communicating with Knight, communicating with the Employer and Insurer's adjuster and communicating with the Employer and Insurer's defense counsel.

40. Through the facts of Knight's injury by accident, communications between Knight and Bender and/or the Bender firm, their receipt of correspondence in Knight's medical records, and through other ways that discovery will reveal, Bender and the Bender firm knew or should have known that Knight had a potential and/or pending third-party claim related to his worker's compensation claim.

41. At no time during Bender and the Bender firm's representation of Knight did they inform Knight of the impact a potential third-party claim could have on his worker's compensation benefits.

42. In March of 2012, Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm were soliciting potential clients in Virginia to be part of a multi-district litigation case against Skechers concerning the type of toning shoes Knight was wearing when he fell at work.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

43. In March of 2012, as a result of the solicitations of Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm, Knight contacted the Schachter firm regarding the possibility of obtaining representation.

44. The Schachter firm responded by sending a packet of documents to Knight's home in Troy, Virginia.

45. Included in the packet was a Retainer Agreement and a Long Form Questionnaire.

46. One of the questions on the Long Form Questionaire asked, "Do you have an open workers' compensation claim related to the injury that is the subject of this lawsuit?"

47. Knight marked "yes" in answer to that question.

48. On or about April 10, 2012, Knight returned the Long Form Questionnaire to the Schachter firm with a signed Retainer Agreement.

49. The retainer agreement noted, in part, as follows:

> "If medical expense payments have been paid on behalf of the Clients by [...] workers compensation [...] Clients are responsible for any reimbursement of those payments to [...] workers' compensation from his portion of the recovery that is required by law and/or contract. An award to Clients will be reduced by the amount of [...] workers' compensation subrogation claims[....] <u>As part of the terms of representation, the attorneys agree to negotiate reductions in the amount of subrogation and reimbursement claims.</u>" (emphasis supplied).

50. On information and belief, shortly after April 10, 2012, representatives of the Schachter firm and the Janet firm also signed the written Retainer Agreement.

51. On or about September 24, 2012, a nurse analyst informed Penny Hendy at the Schachter firm that Knight had an open workers' compensation claim. Her medical history also indicates that "Dr. Niehaus wrote a letter to Susan Abramowitz

9

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

with worker's compensation on 1/26/12." It also notes that Dr. Goldstein "noted in a letter to Bruce Bender [unknown title and specialty] '**Mr. Knight cannot use his legs in gainful employment**' and was not able to offer a specific impairment or disability rating." (brackets and bold in original).

52. Thus, Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm knew or should have known that Knight had a pending worker's compensation case.

53. Thus, Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm knew or should have known of the identity of Knight's workers' compensation counsel.

54. On or about September 10, 2013, the Janet firm sent a settlement agreement to Knight at his new home in Erwin, Tennessee.

55. On the advice of his counsel, Knight signed the agreement in Tennessee on or about September 20, 2013.

56. The release settled his products liability claim against Skechers for $44,000.

57. None of the Defendants ever discussed Knight's potential settlement of the Skechers claim with his workers' compensation Employer and Insurer.

58. None of the Defendants ever informed Knight of the potential impact settling a $44,000 products liability claim would have on his much more valuable worker's compensation claim.

59. Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm failed to negotiate with the Employer and Insurer regarding reductions in the amount

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

10

of subrogation and reimbursement claims despite the fact that they had specifically agreed to do so in the Retainer Agreement.

60. At some point thereafter, the Employer and Insurer learned for the first time of Knight's third-party settlement with Skechers.

61. Virginia Code § 65.2-309 provides as follows:

> A. A claim against an employer under this title for injury, occupational disease, or death benefits <u>shall create a lien</u> on behalf of the employer against <u>any verdict or settlement</u> arising from <u>any right to recover damages</u> which the injured employee, his personal representative or other person may have against <u>any other party</u> for such injury, occupational disease, or death, and such employer <u>also shall be subrogated</u> to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party[....]
>
> D. If an injured employee, his personal representative, or a person acting on behalf of the injured employee receives the proceeds of the settlement or verdict and the employer's lien pursuant to subsection A has not been satisfied, the employer shall have the right to recover its lien either as a credit against future benefits or through a civil action against the person who received the proceeds.

Va. Code § 65.2-309 (emphasis supplied).

62. Pursuant to Virginia Code § 65.2-309, it is well-settled Virginia law that settlement with a third-party without the knowledge and consent of the Employer and Insurer terminates the employee's benefits under the Worker's Compensation Act. <u>See, e.g.</u>, <u>Stone v. George W. Helme Co.</u>, 184 Va. 1051, 1059, 37 S.E.2d 70, 73 (1946); <u>Noblin v. Randolph Corp.</u>, 180 Va. 345, 359, 23 S.E.2d 209, 214 (1942); <u>White Elec. Co. v. Bak</u>, 22 Va. App. 17, 23, 467 S.E.2d 827, 830 (1996) ("When an employer's right to subrogation is defeated by an employee's settlement with a third party without the knowledge or consent of the employer, the employee's benefits under the Workers' Compensation Act are terminated.").

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

11

63. Accordingly, on February 12, 2016, the Employer and Insurer filed an Employer's Application for Hearing in the Virginia Worker's Compensation Commission alleging that Knight's settlement of the claim against Skechers without the Employer and Insurer's knowledge and consent required termination of his worker's compensation benefits.

64. The Employer and Insurer simultaneously stopped paying Knight his worker's compensation benefits, depriving Knight of much needed disability benefits and medical care.

65. On or about March 4, 2016, Knight moved back to Gordonsville, Virginia.

66. By letter of June 14, 2016, Lindsey Craig, an employee and/or agent of the Janet firm admitted that the Janet firm did not obtain the consent of the Employer and Insurer prior to settling Knight's case against Skechers.

## COUNT I – LEGAL MALPRACTICE
### (Bender and the Bender Firm)

67. Plaintiff incorporates by reference paragraphs 1 through 66 as if set forth fully herein.

68. On or about November 2, 2011, Bender and the Bender firm formed an attorney-client relationship with Knight by written and/or oral contract.

69. That relationship gave rise to a duty on the part of Bender and the Bender firm to use a reasonable degree of care, skill and dispatch in rendering the services for which Bender and the Bender firm were employed.

70. Knight employed Bender and the Bender firm to represent him in his pending Virginia worker's compensation case.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

12

71. Bender and the Bender firm knew or should have known that Knight had a potential and/or pending third-party claim related to his worker's compensation claim.

72. The duty on the part of Bender and the Bender firm to use a reasonable degree of care, skill and dispatch required Bender and the Bender firm to inform and advise Knight of the well-established law in Virginia Code § 65.2-309 and related cases.

73. Bender and the Bender firm failed to inform and advise Knight with regard to the impact that settling a third-party claim could have on his worker's compensation benefits.

74. Bender and the Bender firm failed to properly communicate with the Schachter and Janet firms, which they knew or should have known were also representing Knight.

75. Bender and the Bender firm failed to properly communicate with the Employer and Insurer as required by Virginia law.

76. Bender and the Bender firm failed to properly advise and assist Knight in obtaining local counsel in Virginia.

77. Bender and the Bender firm failed to properly disclose to Knight that they lacked sufficient knowledge of Virginia worker's compensation laws to be able to reasonably represent him in his Virginia worker's compensation case.

78. In light of the above actions and omissions, Bender and the Bender firm failed to use a reasonable degree of care, skill and dispatch in rendering the services for which Bender and the Bender firm were employed.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

79. As a result of the malpractice of Bender and the Bender firm, Knight has lost temporary total disability and permanent total disability benefits in the amount of $649,831.57, plus any cost of living adjustments, and medical benefits in an amount to be determined by discovery.

## COUNT II – LEGAL MALPRACTICE
### (Johnson, Hendy, the Schachter Firm, Janet, Jenner and the Janet Firm)

80. Plaintiff incorporates by reference paragraphs 1 through 79 as if set forth fully herein.

81. On or about April 10, 2012, Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm formed an attorney-client relationship with Knight by written and/or oral contract.

82. That relationship gave rise to a duty on the part of Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm to use a reasonable degree of care, skill and dispatch in rendering the services for which they were employed, which specifically included the handling of any worker's compensation subrogation matters.

83. Knight employed Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm to represent him in his Virginia products liability case, which specifically included the handling of any worker's compensation subrogation matters.

84. The duty on the part of Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm to use a reasonable degree of care, skill and dispatch required them to inform and advise Knight of the well-established law in Virginia Code § 65.2-309 and related cases.

85. Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm failed to inform and advise Knight with regard to the impact that settling a third-party claim could have on his worker's compensation benefits.

86. Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm failed to properly communicate with Bender and the Bender firm, which they knew or should have known were also representing Knight.

87. Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm failed to properly communicate with the Employer and Insurer.

88. In light of the above actions and omissions, Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm failed to use a reasonable degree of care, skill and dispatch in rendering the services for which they were employed.

89. As a result of the malpractice of Johnson, Hendy, the Schachter firm, Janet, Jenner and the Janet firm, Knight has lost temporary total and permanent total disability benefits in the amount of $649,831.57, plus any cost of living adjustments, and medical benefits in an amount to be determined by discovery.

WHEREFORE, Knight hereby moves this Court for judgment against the defendants jointly and severally in the amount of TWO MILLION, SIX HUNDRED AND FORTY-NINE THOUSAND, EIGHT HUNDRED AND THIRTY-ONE DOLLARS AND FIFTY-SEVEN CENTS ($2,649,831.57) plus his taxable costs with interest from September 20, 2013.

TRIAL BY JURY IS DEMANDED.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

By: _____
Of Counsel

Matthew W. Broughton (VSB No. 25226)
H. David Gibson (VSB No. 40641)
Andrew D. Finnicum (VSB No. 80358)
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
Fax: (540) 983-3400
broughton@gentrylocke.com
gibson@gentrylocke.com
finnicum@gentrylocke.com
Counsel for Plaintiff